UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nicole W., | Civ. No. 20-2697 (SRN/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

---

Mac Schneider, Esq., Schneider, Schneider & Schneider, counsel for Plaintiff.

Chris Carillo, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross–motions for summary judgment, filed in accordance with D. Minn. LR 7.2(c)(1). (*See* Doc. Nos. 20, 22.) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons set forth below, this Court recommends that Plaintiff's motion for summary judgement be denied, and Defendant's motion for summary judgement be granted.

## BACKGROUND

Plaintiff is a 38-year-old female. (Tr. 279, 323.)[1] She has a high school education, and has previously worked a variety of jobs, including cashier, direct support professional, sales associate, office assistant, and assistant store manager. (Tr. 286, 307.) Leading up to her application for disability benefits, Plaintiff worked at CVS Pharmacy Inc. as a cashier from November 1, 2015 to August 8, 2018. (Tr. 42, 298.) At the time of Plaintiff's hearing before an Administrative Law Judge ("ALJ") in 2020, Plaintiff was "technically" employed through Research Solutions Center doing surveys over the phone, but had not worked since November 2019.[2] (Tr. 41.) Plaintiff also started doing temporary work through Door Dash, a food delivery service, with her husband who drives[3] while she delivers the food.[4] (Tr. 42.)

Plaintiff has sought medical treatment for various physical ailments over the years. Of note, Plaintiff had three lumbar spine surgeries – two in 2014 and one in 2010.[5]

---

[1]  Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative record. (Doc. No. 18.)

[2]  Plaintiff testified that Research Solutions Center was "robbed," and therefore there was no work for her to do until the company could replace the stolen equipment. (Tr. 42.)

[3]  Plaintiff testified that she "[doesn't] like driving if [she] can help it" because she has had a panic attack while driving before. (Tr. 49.) In her Function Report contained in the record, Plaintiff indicates she drives "not often, but sometimes." (Tr. 318.)

[4]  Although Plaintiff was employed and working part time, the ALJ determined that she did not meet the threshold for "substantial gainful activity." (Tr. 12–13.)

[5]  Plaintiff had an L5-S1 open discectomy on November 1, 2014, an L5-S1 microdiscectomy on January 28, 2014, and an L4-L5 laminectomy and discectomy on February 15, 2010. (Tr. 428.)

(Tr. 428.) Plaintiff previously filed an application for disability benefits on April 3, 2012, and Title XVI supplemental security income on April 6, 2012, which were denied on July 19, 2013, and denied on reconsideration on September 2, 2014. (Tr. 67–86, 87–89.) Plaintiff then filed an application for Title II disability insurance benefits and Title XVI supplemental security income on August 31, 2018, which is the application that is presently before the Court. (Tr. 236–40, 241–51.) She now alleges a disability onset date of August 8, 2018, the last date she worked at CVS.[6] (Tr. 323, 278.)

Plaintiff's application was initially denied on November 15, 2018, and denied again upon reconsideration on February 22, 2019. (Tr. 159–60, 171–72.) Plaintiff requested a hearing before an ALJ and the hearing was held on January 7, 2020. (Tr. 35–66.) On February 26, 2020, the ALJ issued his decision following the sequential five-step

---

[6] Plaintiff's application originally alleged a disability onset date of February 15, 2010. During the hearing before the ALJ, Plaintiff amended her disability onset date to August 8, 2018. (Tr. 323, 278.)

evaluation process[7] and determined that Plaintiff was not disabled as defined in the Act.[8] (Tr. 7–29.)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 12–13.) At step two, the ALJ concluded that Plaintiff had the following medically determinable and severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; obesity; migraines; diabetes mellitus; major depressive disorder; and generalized anxiety disorder. (Tr. 13.) At step three, the ALJ determined that Plaintiff's impairments or a combination thereof did not meet or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. (Tr. 13.) These findings are not challenged on appeal.

Before continuing to step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light" work with the following exceptions:

> The claimant . . . is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk about 6 hours in an 8-hour workday and can sit about 6 hours. She can frequently climb ramps and stairs but only occasionally ladders, ropes, and scaffolds. She can

---

[7]   At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[8]   The ALJ mistakenly noted the original alleged onset date of February 15, 2010, instead of the amended date of August 8, 2018. This mistake, however, is not at issue on appeal, nor does it affect this Court's recommendation.

> frequently balance, stoop, kneel, crouch, and crawl. She can have only
> occasional exposure to wetness. She should work in an environment with
> no more than moderate noise levels (as defined by the Selected
> Characteristics of Occupations). She can understand, remember, and carry
> out simple, routine instructions. With such a parameter, she is able to
> maintain concentration, persistence, and pace.

(Tr. 16.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 22.) At step five, considering the Plaintiff's age, education, work experience, RFC, and the opinion of a vocational expert, the ALJ concluded that the Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy such as price marker, inspector, hand packager, and packing line worker. (Tr. 22–23.) The ALJ therefore found Plaintiff not disabled under the Act. (Tr. 23.) Plaintiff's request for review with the Appeals Council was denied on October 26, 2020, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6); 20 C.F.R. § 404.981.

On December 30, 2020, Plaintiff initiated judicial review with this Court. (Doc. No. 1, Compl.) Plaintiff does not challenge the ALJ's determination regarding Plaintiff's mental limitations nor the weight given to medical examiners' opinions. Instead, Plaintiff focuses solely on her physical limitations and the weight the ALJ gave to Plaintiff's subjective complaints.

## DISCUSSION

### I.  Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The Social Security Administration must find a

claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that they are entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated that they cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

      The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Substantial evidence in the record may support two conflicting outcomes, creating a "zone of choice" in which the ALJ may exercise discretion to grant or deny benefits.

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). This Court will not overturn an ALJ's determination if it falls within that zone, "even if we might have weighed the evidence differently." *Id.* at 939 (citations omitted).

II.   **Analysis**

On appeal, Plaintiff makes two arguments: (1) that the ALJ failed to properly consider the *Polaski* factors or note any evidence of inconsistency when analyzing Plaintiff's subjective complaints; and (2) that the ALJ erred by failing to assess Plaintiff's ability to engage in manipulative activities when determining the RFC. (Doc. No. 21, Pl.'s Mem. 4–12.)

A.   **The ALJ's Assessment of Plaintiff's Subjective Complaints is Supported**

Plaintiff asserts that she experiences "severe, chronic pain as a result of fibromyalgia, spinal impairments" in all areas of her body, "including her low back, feet, hips, into her legs, arms, hands and fingers." (Pl.'s Mem. 4, 8.) Plaintiff argues that the ALJ erred in analyzing Plaintiff's subjective allegations of pain pursuant to Social Security Ruling 16-3p[9] by dismissing her credible reports and testimony.[10] When

---

[9]   This Social Security Ruling instructs that an ALJ should "consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017). According to the Ruling, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.* at *10.

[10]   Plaintiff argues that the ALJ improperly dismissed Plaintiff's report and testimony of her pain by raising the issue of Plaintiff's "credibility." (*See* Pl.'s Mem. 4–6, 9–10 (stating that "[t]he ALJ should have determined that the [Plaintiff's] relatively steady

7

considering a claimant's subjective allegations of pain, the Eighth Circuit's decision in *Polaski v. Hecker* identifies the factors[11] that the ALJ must consider. *Polaski v. Hecker*, 739 F.2d 1320, 1322 (8th Cir. 1984). In addition to objective medical evidence, the ALJ must consider "the claimant's prior work record, and observations made by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; [and] 5. functional restrictions." *Id.*

---

work history . . . bolstered her credibility," and "if the ALJ had properly weighed the *Polaski* factors, he would have found that her allegations of disabling pain were credible").) While an analysis of a claimant's subjective complaints was referred to as a credibility determination before, the Social Security Administration ("SSA") eliminated the use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character." *See* Social Security Ruling 16-3p, 2017 WL 5180304 at *2, 8 (Oct. 25, 2017). Instead, adjudicators examine the consistency between subjective assertions and the record as a whole by considering all of the evidence in an individual's record. *Id*. Although the usage of terminology changed, the substantive analysis remains the same. *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) ("[I]t largely changes terminology rather than the substantive analysis to be applied.").

[11]    The *Polaski* factors are codified at both 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). The factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Here, Plaintiff does not argue that the ALJ failed to consider the *Polaski* factors. Instead, she argues that the ALJ did not consider the "breath of *Polaski* factors." (Pl.'s Mem. 4–10.) For example, Plaintiff contends that the ALJ mentioned Plaintiff's work history in passing without granting any specific weight. (*Id*. at 6.) Plaintiff also contends that the ALJ failed "to note any evidence that is contrary to the [Plaintiff's] allegations." (*Id*. at 4.)

This Court has reviewed the record along with the ALJ's decision, and finds that the ALJ properly considered the Plaintiff's subjective complaints under *Polaski* factors[12] and noted extensive medical records that are inconsistent with Plaintiff's allegations. For example, while Plaintiff asserts she was "persisten[t] in seeking medical treatment," (Pl.'s Mem. 6, 9), the ALJ points to several records showing medical non-compliance. (*See, e.g.*, Tr. 526 (December 24, 2018 Physical Therapy note from Bridget L. Anderson, P.T.) (noting that Plaintiff was discharged from PT after not returning to the clinic over the past 30 days after "total of 4 visits, had 1 cancel and 1 no-show"); Tr. 983 (March 15, 2019 Physical Therapy note by Alexa L. Grubb, D.P.T.) (indicating that Plaintiff was discharged after not returning for "further treatment in over a month" after two visits on January 31, 2019 and February 14, 2019). In addition, the ALJ noted medical records that stated Plaintiff was not checking her blood sugars or watching her diet in January 2019, and that Plaintiff reported in October 2019 that "she was bad at taking her medication for

---

[12] While the ALJ did not expressly cite *Polaski*, he noted that his finding is based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSR 16-3p. (Tr. 16.)

9

diabetes." (Tr. 19, 890, 1565.) "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citations omitted)); *see also Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[F]ailure to seek medical assistance for her alleged physical . . . impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits.").

The ALJ also noted inconsistent medical records regarding migraines and physical examinations only showing mild findings. (*See, e.g.*, Tr. 18 (noting a medical record from September 2018 that "[Plaintiff] had normal range of motion and strength in all extremities, and a normal spine exam with no tenderness" when complaining of leg and foot cramps); Tr. 18 (noting the result of physical exam that showed "only mild lumbar impairment, with normal gait and station, mild lumbar tenderness to palpitation, reduced lumbar extension, but her lumbar spine was stable with no palpable trigger points in the low back"); Tr. 19 (noting a medical record from January 2019 that "[Plaintiff] was satisfied with the medication regiment for her migraines");[13] *see also*, *infra* pp.14–15 (discussing medical records showing inconsistency regarding Plaintiff's manipulative abilities).

In addition to objective medical evidence, the ALJ also considered other factors in assessing Plaintiff's subjective complaints. For example, the ALJ's decision indicates that he properly considered Plaintiff's daily activities. (*See, e.g.*, Tr. 17 (noting that "when

---

[13]  At the hearing before the ALJ, Plaintiff testified about migraines affecting her work. (Tr. 49.)

10

[Plaintiff] goes shopping she can last a little longer when holding onto a cart" and that Plaintiff "cooks approximately twice per week, but generally relies on her children and her husband"); Tr. 18 (noting that in June 2019, "[Plaintiff] was still having low back pain, but was trying to stay active, walking, and going to the pool").) The record also shows that the ALJ specifically inquired about Plaintiff's daily activities during the hearing, including about her ability to walk around and get shopping done, Plaintiff's family and current living arrangements, and her ability to cook and wash the laundry at home. (Tr. 44–47.) And, though not specifically discussed by the ALJ, Plaintiff's medical record also shows that in September 2019, she attended physical therapy for some back pain after "doing some light lifting helping a friend move." (Tr. 1473.) At that time, Plaintiff rated her pain as "1-2/10 intensity." (*Id.*)

Further, the ALJ considered other precipitating and aggravating factors for Plaintiff's complaints of pain, which is reflected in the additional limitations provided in the RFC – the RFC limits Plaintiff to "only occasional exposure to wetness" and stated that Plaintiff "should work in an environment with no more than moderate noise levels." (Tr. 16.) And the ALJ also discussed Plaintiff's past work history in his decision. (*See, e.g.*, Tr. 17 (noting that Plaintiff "hurt her back a few times doing lifting while she worked [at her last job], and she had a "hard time with her back, with standing and lifting"); Tr. 21 (describing Plaintiff's testimony that "she did not lose [her] job because

of her physical impairments").)[14] In addition, the ALJ discussed Plaintiff's current employment status as being "technically" employed and that she is able to perform temporary work through Door Dash. (Tr. 17);[15] *see Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (stating that, among other things, working after the alleged disability onset date was inconsistent with finding disability); *Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (noting that the claimant's daily activities, including part-time work, were inconsistent with the disability claim).

Therefore, as shown above, the ALJ considered several *Polaski* factors in his decision, and also pointed to various evidence in the record to highlight inconsistencies between the record and Plaintiff's subjective complaints. An ALJ is not required to explicitly discuss each factor individually or in depth. *See Hanson v. Colvin*, No. 12-cv-961 (TNL), 2013 WL 4811067, at *16 (D. Minn. Sept. 9, 2013) ("While the ALJ must consider the above factors, the ALJ need not discuss each one individually . . . .") Here, the ALJ's consideration of the factors was sufficient for purposes of weighing Plaintiff's subjective complaints of pain, and moreover, was supported by substantial evidence in the record. Therefore, with the given deference, the ALJ's decision in this respect must be affirmed.

---

[14] The ALJ noted that Plaintiff's last job at CVS ended "because she broke a policy with coupons, and she had an issue with another employee who used it as an excuse to get rid of her." (Tr. 17.)

[15] Plaintiff is currently employed making phone calls and doing surveys over the phone; she has also started working at Door Dash a couple times per week to make up income. (Tr. 17.)

### B. The ALJ Properly Assessed Manipulative Limitations

Plaintiff next contends that the ALJ "outright fail[ed]" to assess Plaintiff's manipulative limitations when determining the RFC. (Pl.'s Mem. 10.) Plaintiff argues that if proper manipulative limitations would have been considered, "sedentary and/or light work base would have been significantly eroded." (*Id.*) Plaintiff, however, does not identify what specific limitations should have been added to the RFC. (*See id.*)

Plaintiff is mistaken, as it is evident that the ALJ did consider Plaintiff's manipulative abilities. For example, in his decision the ALJ notes that "[Plaintiff]'s pain flares in the cold weather, and makes it difficult to move her fingers, wrists, and arms." (Tr. 17.) Plaintiff also testified regarding her manipulative function at the hearing before the ALJ. (*See, e.g.*, Tr. 56–57 (testifying that she "[doesn't] have problems using it, but using it does cause pain through my fingers, and hands, and my arms"); Tr. 57 (stating that she is able to use a phone for text message or Facebook for 15 minutes before her fingers get sore from scrolling).) The fact that manipulative issues were discussed at the hearing, and then the reference in the decision about when Plaintiff has problems with pain flares in her fingers and wrists, is evidence that the ALJ considered Plaintiff's manipulative limitations.

Furthermore, the ALJ's decision to not include manipulative limitations[16] in the RFC is supported by substantial evidence. Plaintiff refers to medical records as evidence

---

[16]    Regarding manipulative limitations, Social Security Ruling 96-9p states that "most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for

13

of significant pain and numbness in her hands and fingers. (Pl.'s Mem. 11.) However, the referenced records are based on Plaintiff's reported complaints when she made visits, not on objective medical tests or physician observations. (*See, e.g.*, Tr. 931 (January 29, 2019 medical note by Rohit Mahajan, M.D.) (describing Plaintiff's claim about pain in her shoulder and arms), Tr. 962–64 (January 31, 2019 physical therapy note by Alexa L. Grubb, D.P.T) (reporting Plaintiff's subjective chief problem of pain in "the back of her arm and forearm" with "mild grip weakness"); Tr. 1066 (June 17, 2019 medical note by Jeffrey Hunt, D.O) (noting "[Plaintiff] reports that she gets pain radiating from the upper arm into her hand. She denies any numbness, tingling, or definite focal weakness").) As is true in many disability cases, there is no doubt that the claimant is experiencing pain, but complaints of pain alone are not determinative of whether there should be a finding of disability. *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.") (citations omitted).

    The objective medical records, on the other hand, support finding that Plaintiff does not have a manipulative issue that would require limitation in her functional capacity for purposes of employability. For example, as the ALJ points out, Plaintiff was referred for an Electromyogram/nerve conduction study after complaining of pain in her

---

repetitive hand-finger actions." Social Security Ruling 96-9p, 1996 WL 374185 at *8 (July 2, 1996). Because Plaintiff's challenge on appeal relates solely to manipulative limitations, Plaintiff's subjective complaints about pain in her shoulders and arms is not relevant here.

left arm (with no numbness or tingling). (Tr. 18, 1066.) That test was never completed. (Tr. 18.) And other records reflect that Plaintiff had only mild or slight problems, or in some instances no problems, with her wrist or fingers that would affect her manipulative abilities. *See, e.g.*, Tr. 1159 (July 16, 2019 ED Provider Notes by Dustin G. Leigh, M.D.) (noting that "[Plaintiff] may have slightly diminished strength with abduction at the shoulder. Strength is otherwise full and symmetric with unaffected limb in the elbow, wrist and fingers"); Tr. 984 (February 14, 2019 Physical Therapy note by Alexa L. Grubb, D.P.T.) (describing that Plaintiff "has been noting improvement lately-- hasn't been having any arm, forearm or hand pain. Denies any pain at the moment").)[17] Further, the record also shows that Plaintiff did not mark "reaching" and "using hands" as part of the affected abilities in her Function Report. (Tr. 320.) While Plaintiff's subjective complaints cannot be disregarded solely because they are not supported by medical evidence, they can be discounted where inconsistencies appear in the record as a whole. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Subjective complaints can be discounted, however, where inconsistencies appear in the record as a whole."); *see also Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) ("Because a Claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace . . . . Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively.").

---

[17] In addition to Plaintiff's medical records, the ALJ also discussed Plaintiff's prior work history, and the fact that "[Plaintiff] testified that she did not lose [her last] job because of her physical impairments." (Tr. 21.) And the ALJ further noted that the record does not show a significant deterioration in her condition since that time. (*Id.*)

15

"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The Plaintiff in this case failed to meet her burden, and based on a review of the entire record, this Court concludes that the ALJ did not err when finding that "additional limitations to the [Plaintiff]'s RFC are not warranted." (Tr. 22.)

Because the ALJ did consider Plaintiff's manipulative issues, and because the ALJ's ultimate decision to not include manipulative limitations in the RFC was supported by substantial evidence, the ALJ decision should be affirmed.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 20) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 22) is **GRANTED**.

Date: July 14, 2022
*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).